# United States District Court
# Central District of California

| | |
|---|---|
| RHONDA PELTIER, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Case № 2:16-CV-00774-ODW (SPx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I.　INTRODUCTION

On September 26, 2017, the Court held a one-day bench trial in this action. (ECF No. 61.)  Plaintiff Rhonda Peltier filed this lawsuit following a car accident that occurred when she rear-ended Mark Campbell on an on-ramp to Interstate-405 South. Mark Campbell is an agent of the Drug Enforcement Administration ("DEA"), and was on duty at the time of the incident.  Peltier claims she suffered injuries as a result of Campbell's negligence when he cut her off, and then purposefully stopped in front of her, causing the accident.

The parties submitted, and the Court admitted into evidence, testimony of the parties' direct witnesses through declarations and/or deposition testimony.  The parties submitted the direct testimony of: Mark Campbell, Charles Rosen, M.D., Rhonda Peltier, Eugene Peltier, Robyn Scancich, Officer Darren Wybenga, and Glenn Huber,

M.D.[1] (ECF Nos. 54–55.) The parties cross-examined Mark Campbell, Charles Rosen, M.D., Glenn Huber, M.D., Rhonda Peltier, and Eugene Peltier live in the courtroom.

After Peltier rested her case, the United States moved for a judgment on partial findings, pursuant to Federal Rule of Civil Procedure 52(c). The United States renewed its Motion at the close of the evidence. The Court deferred ruling on the United States' Motion, and now **DENIES** the United States' Motion, and issues this Findings of Fact and Conclusions of Law.

Having carefully reviewed and considered the evidence and the arguments of counsel as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II. FINDINGS OF FACT

**A. The June 2, 2014 Car Accident**

1. On Monday, June 2, 2014, at approximately 9:00 a.m., Plaintiff Rhonda Peltier rear-ended a truck driven by on-duty DEA Special Agent Mark Campbell.
2. The accident occurred on the freeway on-ramp for the Interstate-405 South at Woodruff Avenue in the city of Long Beach.
3. Prior to the accident, Campbell's 2009 Chevy Silverado merged in front of Peltier's 2007 Toyota Corolla. Peltier had to apply her brakes to allow Campbell sufficient space to merge into the lane.

---

[1] The United States objected to paragraphs 7, 12, and 21 of the Declaration of Glenn Huber, M.D., Peltier's treating physician and expert orthopedist. (ECF Nos. 55, 57.) At trial, the Court sustained the United States' objection to paragraph 7 and overruled the objection to paragraph 12. As for paragraph 21, the parties agreed that the Court could strike paragraph 21 of Dr. Huber's declaration, and that the exhibits identified in that paragraph could be authenticated by Peltier. Accordingly, the Court strikes paragraph 21 of Dr. Huber's declaration.

4. Peltier felt threatened by the unexpected merge, and feared Campbell did not see her. She reacted by honking her horn, yelling, gesticulating, and giving the middle finger to Campbell. There was no contact between the cars at this moment.
5. Peltier continued to follow Campbell up the on-ramp of Interstate-405 South, and was approximately two to three car lengths behind him.
6. Out of frustration with Peltier's reaction, Campbell slowed down his truck on the on-ramp, and almost came to a complete stop.
7. Peltier applied the brakes and was able to avoid a collision.
8. Both parties then continued up the on-ramp, when Campbell again applied the brakes out of frustration, and abruptly slowed almost to a complete stop. There was nothing ahead of Campbell requiring him to apply his brakes. (Deposition of Robyn Scancich ("Scancich Dep.") at 17:20-22, ECF No. 58-2. ("Q. Was there any reason you could see for [Campbell] to stop dead on the on-ramp? A. Absolutely not.")
9. Peltier applied the brakes, but could not stop before hitting Campbell's truck in light of his abrupt stop, and the distance she allowed between the two vehicles, while traveling up the on-ramp.
10. After the accident, Campbell immediately stopped his truck and went to speak to Peltier. Campbell did not yell, gesticulate, or act aggressively to Peltier.
11. Peltier stepped out of her car without any assistance and approached Campbell to discuss the incident.
12. Peltier also spoke with a percipient witness, Robyn Scancich. Peltier was visibly upset and shaken after the accident, and there was coffee split on Peltier's clothes when she spoke with Scancich.
13. The Court finds the testimony of percipient witness Robyn Scancich, who does not appear to have any connections to either party, to be

credible. Scancich testified: "[Campbell] either stopped completely or nearly stopped. But either way there was not much Miss Peltier could have done to avoid hitting [Campbell]." (Scancich Dep. at 25:2-10, ECF No. 58-2.)

14. The accident caused no visible property damage to the rear of Campbell's government-owned 2009 Chevy Silverado.

15. Peltier's 2007 Toyota Corolla suffered from a buckled hood and scratched front bumper. Peltier's airbag did not deploy, and she did not hit any part of her body on the interior of the vehicle. She was wearing her seatbelt.

16. Peltier did not immediately go to the hospital, was not transported by ambulance, nor did she seek medical attention on the day of the accident.

### B. Medical Treatment

17. Peltier reported to HealthCare Partners the day after the incident, and complained of low back pain. Peltier had a prior history of sciatica, fibromyalgia, neck pain, and *left* hip pain.

18. In the weeks after the incident, Peltier underwent physical therapy for her low back pain, and also received an x-ray and MRI of her low back. The x-ray, taken on June 20, 2014, revealed a degenerative condition called a "Schmorl's Node," but no broken bones. The MRI, taken on July 14, 2014, revealed a 1-2mm diffuse disc bulge with mild disc height loss at L-3-L4. She participated in physical therapy from July 25, 2014 through November 26, 2014, at Advanced Orthopedic PT.

19. On September 10, 2014, Peltier reported for evaluation to Dr. Daniel Stephenson at Beach Cities & Orthopedic Sports Medicine, with a chief complaint of low back pain. Dr. Stephenson noted that Peltier complained of "LBP x 5-6 months." (Defendant's Trial Exhibit ("DX") 1016-23.) After the incident, Peltier experienced increased low back pain

with radicular pain. Dr. Stephenson examined her and assessed her as having lumbar degenerative disc disease. He recommended physical therapy for range of motion and core strengthening.

20. Dr. Stephenson also recommended, and Peltier received, epidural injections in her back, which the Court finds were causally related to her degenerative disc disease.

21. On January 18, 2017, Dr. Huber performed an arthroscopic surgery on Peltier's *right* hip, and prescribed subsequent rehabilitative physical therapy. As discussed below, the Court finds this injury was not causally related to the accident.

### III. CONCLUSIONS OF LAW

**A. Liability**

22. The Federal Tort Claims Act ("FTCA") preconditions liability and jurisdiction upon proof of an actionable duty, causation, and recoverable damages under the law of the state where the conduct complained of occurred. *See* 28 U.S.C. §§ 1346(b)(1) and 2674 *et seq.*

23. To be cognizable under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Dalehite v. United States*, 346 U.S. 15, 17 (1953).

24. Campbell worked for the DEA, and thus was a government employee. At the time of the accident, Campbell was on duty, and thus was acting within the course and scope of his employment with the DEA.

25. California law applies to this action. *Molzof v. United States*, 502 U.S. 301, 305 (1992); 28 U.S.C. §§ 1346(b), 2674.

26. In California, "'[t]he elements of a cause of action for negligence are…(a) a legal duty to use due care; (b) a breach of such a legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) (citing and quoting *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992)); *see also* Cal. Civ. Code § 1714(a).

27. "A driver is not necessarily negligent because his vehicle rear-ends another." *Pittman v. Boiven*, 149 Cal. App. 2d 207, 214 (1967) (citing cases and explaining factors that are relevant to determining liability in a rear end accident). A driver also has a duty to give an appropriate signal if stopping abruptly. Cal Veh. Code § 22109 ("No person shall stop or suddenly decrease the speed of a vehicle on a highway without first giving an appropriate signal…to the driver of any vehicle immediately to the rear when there is opportunity to give the signal.").

28. Campbell was negligent in the operation of his truck when he stopped on the on-ramp of Interstate-405 South. He did not act reasonably under the circumstances because there was nothing in front of him requiring him to slow down on the first or second occasion. Instead, he acted purposefully out of frustration with Peltier's reaction. Campbell's act of stopping his vehicle abruptly on the on-ramp to Interstate-405 South was a substantial factor in causing the collision.

29. At the same time, a driver "shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway." *Id.* § 21703. Where a plaintiff also acts negligently, the plaintiff's recovery is reduced by his or her portion of fault. *Pfeifer v.*

*John Crane, Inc.*, 220 Cal. App. 4th 1270, 1285 (2013) (citations and quotations omitted) ("The comparative fault doctrine is designed to permit the trier of fact to consider all relevant criteria in apportioning liability. The doctrine is a flexible commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury….").

30. The Court finds Peltier was also negligent. Had Peltier driven at a slower speed, and provided more space between her and Campbell's vehicle, which she had just observed slow down drastically once before the impact, she may have been able to avoid the collision. The Court determines Peltier's negligence was a substantial factor in causing the accident, and apportions fault to her of 25%, which will reduce her damages accordingly.

**B. Damages**

    **i. Economic Damages: Past Medical Expenses**

31. A plaintiff may only recover the reasonable value of past medical services. *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555 (2011). A plaintiff's damages are limited to "the lesser of (1) the amount paid or incurred for past medical services, and (2) the reasonable value of the services." *Ochoa v. Dorado*, 228 Cal. App. 4th 120, 134 (2014) (citing *Howell*, 52 Cal. 4th at 556). To recover for past medical expenses, a plaintiff must prove: (1) the amount of each expense; (2) that each of the charges was reasonable; (3) that each of the services was actually given, and was reasonably necessary to diagnose and treat the injuries; and (4) that the condition which necessitated the treatment was the legal result of the injury caused by the defendant. *See Ochoa*, Cal. App. 4th at 137.

32. Both parties' experts agree that Peltier likely suffered some low back strain and pain as a result of the accident. (Huber Decl., ¶ 12, ECF No. 55-3; Rosen Decl., ¶ 37, ECF No. 54-2.) The accident also likely exacerbated her preexisting condition. A reasonable initial course of treatment for such an injury would include physical therapy and anti-inflammatories for a number of weeks after the incident. (Rosen Decl., ¶ 37, ECF No. 54-2.)

33. Dr. Huber testified that Peltier's right hip surgery in January 2017 was a result of the incident. The Court does not find this testimony credible or persuasive, and declines to find that Peltier's right hip surgery and associated treatment are causally related to car accident, which occurred in June 2014—two and a half years earlier. The credibility of Dr. Huber's testimony is also eroded because he did not review Peltier's medical records prior to forming his initial opinions, as disclosed in his expert report. The Court excluded any opinions based on his review of these records when it granted the United States' Motion in Limine No. 1. (*See* ECF Nos. 51, 56.) The fact that Dr. Huber claims he later reviewed the records, but they had absolutely no impact on his opinions only further calls into question his credibility. Furthermore, the Court was not persuaded that Peltier submitted sufficient evidence of the mechanism of injury, as it relates to her right hip, especially where Peltier testified in deposition that her body did not make contact with the inside of her vehicle.

34. The Court also finds that the epidural injections Peltier received were not a result of her preexisting degenerative disc disease, and thus not causally related to the accident. Any exacerbation of her preexisting condition should have been treated with physical therapy. Peltier's expert, Dr. Huber, conceded that he would expect any acute back pain

related to the accident would be resolved, and characterized Peltier's pain, which continued over two years, as chronic. He further opined that he would not recommend injections because she was not complaining of radicular or nerve symptoms, which is what epidural injections are used to treat.

35. The Court finds Peltier's initial evaluation for her back injury, and course of treatment, including physical therapy, were proximately caused by the accident, and were reasonable and necessary. The Court awards **$1,706.84** in past medical expenses:

| Dates of Service | Location | Recoverable Cost |
|---|---|---|
| 06/13/14 | Memorial Medical Group Inc. (Plaintiff's Trial Exhibit ("PX") 10.) | $127.05 |
| 07/25/14-11/26/14 | Advanced Orthopedic PT (PX 11.) | $802.00 |
| 06/20/14 07/14/14 | Los Coyotes Imaging Center (PX 12.) | $544.59 |
| 9/10/14-01/21/15 | Beach Cities Orthopedics & Sports Medicine (PX 13.) | $233.20[2] |
| | **TOTAL** | **$1,706.84** |

---

[2] The Court calculated this amount by removing the charges for the x-ray and MRI of Peltier's right hip, in light of its findings discussed above. The Court awards the expenses related to her January 21, 2015 visit ($101.60), as a reasonable and necessary follow-up visit after her initial consultation with Dr. Stephenson for her back pain. The Court does not award her damages for visits after this date.

9

### ii. Economic Damages: Future Medical Expenses

36. Future medical expenses are appropriate where a plaintiff proves: 1) the reasonable value of those services; 2) that the future care is reasonably certain and necessary; and 3) that the condition requiring future care is causally connected to the injuries inflicted by the defendant. *Garcia v. Duro Dyne Corp.*, 156 Cal. App. 4th 92, 97 (2007); *see also* Cal. Civ. Code § 3283.

37. The Court finds Peltier's need for future medical care speculative and not causally related to the accident because her alleged future care relates to her right hip injury. To the extent Peltier claims future care related to her back injury, the Court finds it speculative, and more likely than not related to her pre-existing conditions, which included prior complaints of, and treatment for, neck and back pain, more likely related to a degenerative condition.

### iii. Non-Economic Damages

38. In California, a plaintiff may recover non-economic damages for past and future pain and suffering. *See Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1664–65 (1994) ("Garden-variety pain and suffering defies a nice standard of calculation.").

39. Where a plaintiff is comparatively at fault, the amount of non-economic damages is also reduced according to the apportionment of fault. *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 828–29 (1975) ("Therefore, in all actions for negligence resulting in injury to person or property, the contributory negligence of the person injured in person or property shall not bar recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering.").

40. Having considered the evidence Peltier presented regarding the pain, suffering, and anxiety she experienced during, and after, the incident, the Court awards **$2,500** in non-economic damages.

C. **Apportionment of Fault & Reduction of Damages[3]**

41. The Court previously found Peltier to be 25% at fault for this accident, and her damages must be reduced accordingly. *Id.*

| **Damages** | **Total Awarded** | **% of Fault** | **Recoverable Amount** |
|---|---|---|---|
| Economic: Past Medical Expenses | $1,706.84 | 25% | $1,280.13 |
| Non-Economic | $2,500 | 25% | $1,875.00 |
| | | **TOTAL** | **$3,155.13[4]** |

//
//
//
//
//
//
//
//

---

[3] In addition to medical billings and proof of payment, Peltier submitted a Property Damage Report, which is an estimate of the cost to repair her 2007 Corolla. (PX 1.) However, the report does not indicate anywhere that the estimate for repairs was ever paid. (*See id.*) Peltier's declaration only states: "Exhibit 1 is the property damage report I received for my Toyota Corolla. On page 6, it shows that they cleaned up my coffee spill in the car." (Peltier Decl., ¶ 26, ECF No. 55-1.) Nowhere does Peltier prove that she is responsible for paying the amounts in the estimate, nor did she testify that she intends to repair her vehicle in the future, which might allow the Court to consider the Property Damage Report as evidence of the reasonable value of her vehicle. Accordingly, the Court does not award Peltier property damages. *See Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 42–45 (1968).

[4] The FTCA precludes an award of prejudgment interest. 28 U.S.C. § 2674.

## IV. CONCLUSION

In light of the Court's findings of fact and conclusions of law, the Court **ORDERS** the parties to confer and submit a Proposed Judgment. The parties shall submit the Proposed Judgment no later than 7 days after issuance of this Order.

**IT IS SO ORDERED.**

October 16, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**